IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

       v.        :        **CRIMINAL NO. 19-cr-367**

JOSEPH R. JOHNSON, JR.        :

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CERTIFICATE OF INNOCENCE

The United States of America, by its attorneys, Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, and Linwood C. Wright, Jr., Assistant United States Attorney for the District, hereby opposes defendant Joseph R. Johnson, Jr.'s motion for certificate of innocence. In support of its opposition, the government relies on this memorandum.

## I.      BACKGROUND

On June 27, 2019, a federal grand jury sitting in the Eastern District of Pennsylvania returned a two-count indictment charging defendant Joseph R. Johnson, Jr. with one count of false statements and aiding and abetting, in violation of 18 U.S.C. §§ 1001 and 2, and one count of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 1028A and 2. On November 14, 2019, a petit jury convicted Johnson of the charges in the indictment. On February 28, 2020, this Court sentenced Johnson to a total term of imprisonment of 32 months to be followed by three years' supervised release. On March 13, 2020, Johnson's timely amended notice of appeal was received by the Third Circuit. On August 10, 2020, Johnson began serving his sentence of imprisonment.

On June 22, 2021, the Third Circuit heard oral argument on Johnson's appeal. On November 23, 2021, it reversed and remanded this Court's judgment and ordered this Court to enter a judgment of acquittal.

The gravamen of the Third Circuit's opinion was that the government failed to prove beyond a reasonable doubt that Johnson's false statement was material. It opined that although "the judge's testimony established that docket filings, in the abstract, might affect his decisionmaking process," the prosecutor in essence fatally failed to "elicit testimony about *how* those filings might affect the decisionmaking process." Significantly, in reversing the Third Circuit noted that "Johnson's actions were malicious," and commented on Johnson's misconduct as follows:

> Let there be no doubt on two points. First, Johnson's conduct was not just a waste of public time and resources. It disrupted the administration of justice, interfered with the orderly work of the federal courts, and flouted the respect due to judges and attorneys sworn to uphold the law. Much more than a warning about our internet-addicted culture, Johnson's actions are a reminder that respect for the rules that support the law is inseparable from the rule of law itself.

*United States v. Johnson*, 19 F.4th 248, 263 (3d Cir. 2021).

On November 24, 2021, the Third Circuit granted Johnson's unopposed emergency motion for bail and ordered that he be released forthwith. On January 4, 2022, this Court entered an order acquitting Johnson.

Despite his malicious and plain misconduct, Johnson now seeks a certificate of innocence as a prelude to a civil suit against the United States. For the reasons articulated in this opposition, Johnson's motion should be denied.

### a.   **Johnson's misconduct and how it was uncovered.**

The evidence presented at trial established that Johnson, through his own misconduct, caused his prosecution. This evidence proved that an individual employing the

username "Devout Player Hater" generated several internet posts voicing unfettered support for accused sex offender actor/comedian Bill Cosby, and casting aspersions on Cosby's accusers. Someone using this same Devout Player Hater username posted an internet query inquiring about the method for bleeding the power steering on a 2001 Honda Accord EX V6. Maryland Department of Motor Vehicles records established that the defendant Joe Johnson Jr., owned a 2001 Honda Accord EX V6. Additional motor vehicle records including, but not limited to his replacement driver's license application, proved that Johnson's date of birth included the number 531 and that he resided at 2600 Brinkley Road, Fort Washington, Maryland. Post office box application records signed and submitted in person by the defendant confirmed 2600 Brinkley Road, Fort Washington, Maryland as his physical address, and also proved that he provided jjohnson531@gmail.com as his email address. The numbers in this email address correspond to a portion of his date of birth.

Pennsylvania lawyer Dolores Troiani testified that she represented Andrea Constand. Constand accused Cosby of sexually assaulting her in 2004. These allegations were investigated by law enforcement authorities in Montgomery County, Pennsylvania. On February 17, 2005, then Montgomery County District Attorney Bruce Castor issued a press release announcing his decision to decline prosecution of Cosby on the allegations made by Constand. In addition to Troiani's testimony, documents were entered into evidence which showed that on March 8, 2005, Constand filed a civil lawsuit against Cosby. On February 1, 2006, Constand sued one of Cosby's representatives, Martin Singer, and in the same lawsuit, sued the National Enquirer as a codefendant. Troiani represented Constand in both lawsuits. Both lawsuits were assigned to the Honorable Eduardo C. Robreno, United States District Court Judge, for the Eastern District of Pennsylvania.

Troiani further testified that in or about 2014, for various reasons, there was a renewed public interest in allegations that Cosby sexually assaulted women. Castor's decision not to prosecute Cosby based on Constand's allegation became an issue in the Montgomery County district attorney's electoral race in which Castor was a candidate. Castor, at the very least inferentially, publicly commented on Constand's viability and credibility as a potential witness against Cosby. As a result of Castor's comments, on October 26, 2015, Constand sued Castor in the United States District Court for the Eastern District of Pennsylvania, for defamation and false light/invasion of privacy. The case was assigned to Judge Robreno. Troiani represented Constand. The civil complaint from that case was introduced into evidence.

On October 27, 2015, the day after Troiani filed the Constand complaint against Castor, Troiani filed a praecipe which attached Castor's February 17, 2005, press release. The praecipe read "PRAECIPE TO ATTACH EXHIBIT "A" TO PLAINTIFF'S COMPLAINT." The praecipe included Troiani's signature, bar ID number, telephone number, fax number, and email address. The attached certificate of service, dated October 27, 2015, also contained Troiani's identifiers. This praecipe, exhibit, and certificate of service were introduced into evidence.

Troiani further testified that on January 3, 2016, she received a series of three emails from an individual identifying himself as "Tre Anthony," from the email address "devoutplayerhater@yahoo.com." These emails were introduced into evidence. Although the subscriber of this email address was at the time unknown, the uniqueness of its phrasing gave rise to the inference that its subscriber was the same Devout Player Hater who generated Internet postings in support of Cosby while disparaging Cosby's accusers. This inference was very strongly supported by the content of the emails generated from the devoutplayerhater email

4

address. The content of the first email threatened to make Cosby accuser Constand's address public along with the address of a presumed Constand relative. The contents of the second email again, among other things, threatened to make Constand's and her presumed relative's addresses public, added additional addresses for Constand, and also casts aspersions on not only Constand, but on ten additional women who had publicly accused Cosby of sexual misconduct. Additionally, this second email, just like the third email, had a series of attachments that included an IRS information referral form that had a specific statement accusing Constand of filing baseless lawsuits against Cosby, Singer, and Castor, collecting settlements on two of the lawsuits, and not paying taxes on those settlements. The attachments also included copies of the complaints filed in Constand's lawsuits against Cosby, Singer, and Castor.

The evidence at trial established that on February 1, 2016, an unknown individual, who was not the defendant, hand delivered a pleading to the clerk's office at the United States District Court for the Eastern District of Pennsylvania for filing in the *Constand v. Castor* lawsuit. This filing became docket entry number 6. By doing so, the individual responsible for creating the pleading, as opposed to the individual who merely delivered it, falsely represented to the judiciary that he was lawyer Dolores Troiani, and that Troiani was filing the pleading on behalf of her client Constand. The pleading consisted of a praecipe with several attachments and a certificate of service. Both the praecipe and certificate of service not only included Troiani's name, but also her bar ID number, telephone number, fax number, and email address. Troiani testified that she neither generated the pleading nor arranged for its filing. Consistent with Troiani's testimony, the jury concluded that the praecipe in the filing that was falsely represented to the court to have been made by Troiani was a slightly altered version of the genuine praecipe filed by Troiani on October 27, 2015, that appeared as entry number 2 on the docket sheet. The

only real difference was the elimination of the genuine October 27, 2015, date on the face of the document. Additionally, the fraudulent certificate of service was a slightly altered version of the legitimate certificate of service that accompanied the genuine October 27, 2015, praecipe. Indeed, in the body of this certificate of service, which was filed on February 1, 2016, the original October 27, 2015, certificate of service date from the genuine certificate remained unaltered.

The attachments to the February 1, 2016, false praecipe mirrored the attachments to the series of January 3, 2016, emails that were generated from the devoutplayerhater email account to Troiani. These attachments not only included copies of the complaints filed by Constand against Cosby, Singer, and Castor, but also the four addresses purportedly attributable to Constand and her presumed relative, and the same IRS information referral form containing the statement about Constand. The filing of the precise attachments that were attached to the emails generated from the devoutplayerhater address circumstantially proved that the individual responsible for generating the filed documents containing the false representations was the same individual responsible for the devoutplayerhater email account and Internet posts. Moreover, this individual knew that Troiani was an actual person, as that is the reason the February 1, 2016, false praecipe and related documents were filed in her name. Additionally, the identifiers that formed the false statement were derived from Troiani's actual court filings.

The Honorable Eduardo C. Robreno, the United States District Court Judge before whom Constand's lawsuit against Castor was pending, testified that in making his decisions in cases over which he presides, he relies on the legitimacy of the filings noted on a case's docket. In this case, it came to his attention that the filing noted as docket entry number 6

6

was fraudulent and as a result, in docket entry number 7, he entered an order which struck the filing in docket entry number 6 from the record.

Circumstantial evidence introduced at trial and accepted by the jury proved beyond a reasonable doubt that the defendant was Devout Player Hater, and generated the pleading containing the factually false statement to the judiciary and willfully caused the pleading to be filed. According to Yahoo records, the devoutplayerhater@yahoo.com email account was created on August 15, 2015, by a person identifying himself as Tre Anthony. That person provided a verified alternate email address of onda062002@yahoo.com. The term "onda" is of course one letter from the term "Honda," which is the type of automobile about which the individual employing the username Devout Player Hater inquired over the internet, and the type of automobile that was owned by defendant Johnson. Yahoo provided the registration Internet Protocol ("IP") address for the devoutplayerhater email address as 96.241.199.112.

A document from ARIN, an acronym for American Registry for Internet Numbers, was introduced into evidence. This document showed that IP address 96.241.199.112 was owned by Verizon. A Verizon document showed that the email username which corresponded with the IP address 96.241.199.112 was jjohnson531@dslextreme.com. This same document showed that this subscriber's account was administered by Ikano, a reseller of Verizon services. A document from Ikano was introduced into evidence which showed that the subscriber to the account was someone with the username jjohnson531, who provided the customer name Joe Johnson with a physical address of 2600 Brinkley Road, Fort Washington, Maryland. These identifiers are the same ones provided in person by the defendant to the United States Postal Service when he made application for his Fort Washington, Maryland post office box. Moreover, the defendant when submitting his application for his post office box provided

jjohnson531@gmail.com as his email address. This same jjohnson531@gmail.com email address is noted on the Ikano document-- and perhaps most importantly, is the email address used by Ikano to bill customer Joe Johnson for its Internet services. This proved that defendant Joe Johnson was Ikano's customer and traces him back as the owner of the devoutplayerhater@yahoo.com email account that was used to send the same documents to Troiani that were attached to the false statement made to the court in Constand's lawsuit against Castor.

Special Agent Kurt Kuechler testified that on February 1, 2018, he interviewed defendant Johnson in the lobby of Johnson's 2600 Brinkley Road, Fort Washington, Maryland apartment building. During this interview Johnson admitted that he had a PACER account. Records from Johnson's PACER account were introduced in evidence. The account was in his name, i.e. Joe Johnson, with the same date of birth that is reflected on his replacement Maryland driver's license application, and the username jjohnson531. Records from Johnson's PACER account were introduced into evidence. Anna Marie Garcia is employed by the Administrative Office of the Courts, and during a large portion of her career served as a PACER Account Specialist and later as Chief of PACER. Garcia testified that, among other things, during the time frame from October 26, 2015, through February 2, 2016, Johnson had access to the dockets of 48,000,000 separate cases. PACER records detailing Johnson's account usage show that he repeatedly accessed court filings relevant to this case.

Johnson's PACER usage records showed that on January 3, 2016, at approximately 6:00 a.m., Johnson's PACER account was used to access Constand's 13-page complaint against Castor. This was over Johnson's home email network. The access occurred approximately three hours before Troiani received the 8:50 a.m. first email from the

devoutplayerhater email address. This 8:50 a.m. email did not have any attachments. At approximately 10:20 a.m., Johnson's PACER account was used to access Constand's 17-page complaint against Cosby. At approximately 10:22 a.m., Johnson's PACER account was used to access Constand's 16-page complaint against Singer. When these documents were accessed, they could be downloaded and printed. At approximately 1:49 p.m. and 4:33 p.m. respectively, Troiani received the second and then third email, from the devoutplayerhater email address. Constand's complaints against Castor, Cosby, and Singer were attached to the second and third emails. The strong inference from this evidence was that Johnson controlled his PACER account, accessed Constand's complaints, and attached those complaints to the emails that were received by Troiani from Johnson's devoutplayerhater email address. This is additional circumstantial evidence that Johnson was Devout Player Hater who was responsible for the factually false statement to the judiciary to which Constand's three complaints were attached. This evidence is buttressed by evidence provided by Johnson's former employer, defense contractor Alion Science & Technology.

William Scott from Alion's Department of Human Capital Business testified and introduced Alion documents which showed that Johnson had been employed by Alion from May 20, 2013, through July 31, 2019. Johnson worked in Alion's office building located at 1100 New Jersey Avenue, Southeast, Washington D.C. Patrick Hitt, Alion's vice president of infrastructure, testified and introduced documents which proved that on February 2, 2016, the day after the false statement was made in the filing in Constand's lawsuit against Castor, Johnson's computer login credentials were used to log onto a computer at Alion's New Jersey Avenue facility. It is against Alion's policy for its employees to share their computer login credentials with anyone. At that time, the computer accessed the United States District Court for

the Eastern District of Pennsylvania's website[1]. This website gave the Alion computer user access to the PACER system. Corresponding PACER records confirmed that at this same time Johnson's PACER account was accessed from an IP address belonging to Alion. Hitt's testimony and Alion records confirm that this IP address was assigned to Alion's New Jersey Avenue building where Johnson worked. PACER records show that at this same time Johnson's PACER account accessed docket entry number 7 in Constand's litigation against Castor. Docket entry number 7 was Judge Robreno's order striking docket entry number 6, which was the filing containing the factually false statement. In the order's footnote the court opined: "[T]his filing is fraudulent and was not filed by the attorney whose purported signature appears on the document. The matter will be referred to the appropriate authority for further action." Within 20 minutes after Johnson's account was used to access docket entry number 7, the same computer accessed Yahoo's privacy disclosure page which provided information regarding a user's ability to update or delete information. Approximately seven minutes later the devoutplayerhater@yahoo.com email address was deleted. The strong inferences to be drawn from this evidence, which the jury could easily and in fact did draw, are that the day after Johnson willfully caused his factually false statement to be filed in Constand's lawsuit against Castor, he checked the docket from his office computer. When he read Judge Robreno's order providing that the matter would be turned over to the "appropriate authority for further action," Johnson became concerned that through his computer usage the fraudulent filing containing the false statement would be traced back to him. Consequently, he deleted his devoutplayerhater@yahoo.com account.

---

[1] Additional Alion records reflected Internet usage for a computer logged onto with Johnson's credentials and showed that from January 6, 2016, through March 31, 2016, websites accessed contained Cosby's name more than 9,000 times and Constand's name more than 900 times.

The front of the envelope containing the filing within which the false statement was made had both an address and return address affixed to it by tape. Additionally, the rear flap of the envelope was sealed by tape. Both the envelope and the strips of tape were submitted to the FBI laboratory for various forensic analyses. FBI Physical Scientist/Forensic Examiner Dyanne E. Carpenter testified that seven fingerprints belonging to Johnson were recovered from her examination of the envelope and the tape which originated from its rear flap. The inference to be drawn from this fact was that the defendant handled the envelope containing the factually false statement that he generated prior to having that false statement delivered to United States District Court in Philadelphia for filing. This was both a permissible, and logical, inference for the jury to draw. This conclusion was buttressed by the fact that the defendant both worked and lived more than 100 miles away from the United States District Court in Philadelphia.

## II.   ARGUMENT

Because Johnson prevailed on appeal after he had been imprisoned, he seeks issuance of a prerequisite certificate of innocence in anticipation of filing a civil suit. The propriety of issuing a certificate of innocence is governed by 28 U.S.C. § 2513, which provides in pertinent part that:

a.   Any person suing under section 1495 of this title must allege and prove that:

(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(a) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

(b) No pardon or certified copy of a pardon shall be considered by the United States Court of Federal Claims unless it contains recitals that the pardon was granted after applicant had exhausted all recourse to the courts and that the time for any court to exercise its jurisdiction had expired.

(c) The Court may permit the plaintiff to prosecute such action in forma pauperis.

(d) The amount of damages awarded shall not exceed $100,000 for each 12-month period of incarceration for any plaintiff who was unjustly sentenced to death and $50,000 for each 12-month period of incarceration for any other plaintiff.

Johnson's motion fails because he cannot satisfy 28 U.S.C. § 2513(a)(2)'s requirement that the defendant "did not by misconduct or neglect cause or bring about his own prosecution." Courts have enforced this statute by its plain language, explaining that it:

> dictates that any 'misconduct or neglect' that 'cause[s] or bring[s] about' a petitioner's prosecution renders him ineligible for a certificate of innocence." *Id*. at 176. Such misconduct or neglect may include "those acts [that had] originally been charged as crimes...." *Id*. at 177.

*United States v. Valle*, 467 F. Supp. 3d 194, 204 (S.D.N.Y. 2020) (quoting *United States v. Graham*, 608 F.3d 164, 176-77 (4th Cir. 2010)).[2]

The defendant, through his misconduct, is obviously responsible for causing or bringing about his own prosecution. In purely volitional acts Johnson elected to create false documents casting aspersions on the character of a sexual assault victim with whom he had no connection. He then stole the victim's counsel's identity and inserted himself into the victim's federal lawsuit, with which he had no connection. He painstakingly altered legitimate documents

---

[2] In reaching this conclusion the court in *Valle* as did the Fourth Circuit in *Graham* rejected the Seventh Circuit's reasoning in *Betts v. United States,* 10 F.3d 1278, 1285 (7th Cir. 1993), that a finding of misconduct or neglect cannot be premised on offense conduct.

12

to add to his false documents and filed all these documents using the identity he stole from the victim's counsel.

Johnson sought to hide his misconduct and avoid detection. In this vein, he employed the username "Devout Player Hater" when posting Internet comments disparaging women accusing Cosby of sexual offenses, and used the alias "Tre Anthony" when identifying himself in emails to Dolores Troiani, whose identity he stole. Rather than file the documents that he fraudulently generated using the ECF system, which the evidence showed he was intimately familiar, he elected to have the documents hand-delivered by an anonymous individual. He further arranged for this delivery to the District Court in Philadelphia to take place while he was physically at his job, working for a defense contractor in the District of Columbia.

Johnson's volitional, unnecessary, and malicious misconduct caused a chain of events which resulted a significant expenditure of judicial and prosecutorial resources, and to the public's detriment, the disruption of the orderly administration of justice. Had Johnson not gone down the wrongful path upon which he elected to embark he would have neither been prosecuted nor imprisoned.

The district court's thorough and scholarly opinion in *Valle* involved a similar circumstance, and is persuasive. There, the defendant, a police officer, engaged in lengthy Internet discussions with others with similar interests, spelling out very detailed plans to kidnap, sexually torture, and murder the defendant's wife and other female acquaintances. The court provided exhaustive details of these very disturbing discussions, and added, "Although most of Valle's alleged criminal conduct took place in these electronic 'chats,' the Government cited other conduct that was allegedly preparatory to the planned kidnappings. For example, Valle

conducted unauthorized searches over NYPD computer databases concerning several women he targeted." *Id.* at 196.

The defendant was convicted at trial of conspiracy to commit kidnapping, and of accessing a federal database without authorization in violation of the Computer Fraud and Abuse Act (the "CFAA") (18 U.S.C. § 1030). Both counts of conviction were subsequently vacated on grounds that the government had not proved all elements of the offenses. The district court granted a judgment of acquittal as to the conspiracy count, reasoning that there was insufficient evidence that the defendant entered into a genuine agreement to kidnap any particular person, as opposed to engaging in "fantasy role-play." The court upheld the CFAA conviction, but that charge as well was overturned on appeal, as the Second Circuit concluded that the misuse of the police database had not "exceed[ed] authorized access" as defined in the CFAA.

Notwithstanding the defendant's acquittal, the court declined to issue a certificate of innocence. It reasoned:

> [I]t is difficult to conceive of a matter in which a defendant more clearly brought about his own prosecution. In the middle of the night, in the solitude of his own apartment, Valle – an NYPD officer who patrolled the streets of New York City each day with a firearm and handcuffs – planned and schemed with others over hundreds of hours, in excruciating detail, how he would kidnap, sexually torture, and murder real women he knew, including his wife. In these Internet chats, Valle exchanged ideas and plans with his alleged co-conspirators about how these crimes could best be accomplished, and in a fashion so as to avoid arrest.

*Id.* at 208. The defendant, the court stated, "was well-aware – as an experienced police officer – that someone viewing his Internet activity might reasonably conclude that he had schemed to commit 'conspiracy to murder, murder, or attempted murder. . . . Valle was likewise aware, at the time, that the searches he conducted regarding targeted women over the NYPD's computer system – searches that accessed federal, state, and local law enforcement databases – constituted misconduct." *Id.* at 208-09.

14

The same conclusion applies here. Johnson, who appropriated the identity of an attorney in order to file malicious information in the record of a pending federal matter, cannot possibly assert that this was not "misconduct" that triggered a federal inquiry, as Judge Robreno immediately proposed, and then the criminal case that ensued. In that criminal matter, Johnson was ultimately exonerated not because he had not engaged in misconduct, but only because his fraudulent actions did not meet the legal definition of materiality. The Third Circuit expressly pronounced that Johnson "disrupted the administration of justice, interfered with the orderly work of the federal courts, and flouted the respect due to judges and attorneys sworn to uphold the law." *Johnson*, 19 F.4th at 263.

For these reasons, based on the plain language of the statute and the court's exhaustive explication of that statute in *Valle*, Johnson's request for a certificate of innocence should be denied.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


*/s/Linwood C. Wright, Jr.*
LINWOOD C. WRIGHT, JR.
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Opposition to Motion for Certificate of Innocence was served, by first class mail postage prepaid, on the defendant as follows:

Joseph R Johnson, Jr.
Post Office Box 441572
Fort Washington, MD 20749

*/s/Linwood C. Wright, Jr.*
LINWOOD C. WRIGHT, JR
Assistant United States Attorney

Date: May 12, 2022

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 19-367 |
| | : | |
| JOSEPH R. JOHNSON, JR. | : | |

## O R D E R

AND NOW, this        day of     , 2022, upon consideration of the defendant's Motion

for Certificate of Innocence, and the government's opposition thereto, it is hereby

ORDERED

that defendant's Motion be, and hereby is, DENIED.

BY THE COURT:

_____

**HONORABLE HARVEY BARTLE, III**
*Judge, United States District Court*